768 So.2d 325 (2000)
Lora Agnes BURKES, Appellant,
v.
FRED'S STORES OF TENNESSEE, INC. and Dr. David Bonzone, RPH, Appellees.
No. 1999-CA-00896-COA.
Court of Appeals of Mississippi.
October 3, 2000.
*326 C. Victor Welsh, III, Jackson, Attorney for Appellant.
A. Lee Abraham, Jr., Clinton M. Guenther, Scott Burnham Hollis, Greenwood, Attorneys for Appellees.
BEFORE SOUTHWICK, P.J., IRVING, AND THOMAS, JJ.
IRVING, J., for the Court:
¶ 1. This case arises from a suit filed by Laura Agnes Burkes on December 4, 1996, in the Circuit Court of Holmes County against Fred's, Inc., d/b/a Fred's Pharmacy,[1] Dr. David Bonzone, and Defendant Doe 1-20, for damages which Burkes alleges were caused by her having been given the wrong prescription medication by Bonzone, a pharmacist, an employee of Fred's Pharmacy in Lexington, Mississippi. Fred's and Bonzone filed separate answers and defenses. During the course of discovery, Fred's and Bonzone removed this action to the United States District Court for the Southern District of Mississippi.
¶ 2. In September 1997, Burkes's current counsel filed a motion to remand the case to the Circuit Court of Holmes County. The federal district court granted the motion on December 12, 1997, and remanded the case to the Circuit Court of Holmes County. On August 24, 1998, the circuit court entered its order granting summary judgment against Burkes. Burkes filed a motion for reconsideration on August 27, 1998, which was denied in a judgment and final order of dismissal with prejudice entered by the circuit court on May 3, 1999. This appeal is from that judgment. The following assignment of error is taken verbatim from Burkes's brief:
Whether the Trial Court erred in granting summary judgment for failure of the Plaintiff to disclose testimony of expert witnesses where it was undisputed that:
The Defendant Pharmacist David Bonzone had incorrectly given Lora Agnes Burkes "Quinidine Sulfate" when she presented a prescription for "Quinine Sulfate."
Ms. Burkes had designated two expert witnesses who were unable to give final opinions due to Bonzone's refusal to participate in a deposition. *327 Finding reversible error, we reverse and remand.

FACTS
¶ 3. Burkes's lawsuit alleges that on August 12, 1996, she brought a prescription for quinine to Fred's Pharmacy to be filled. This drug had been prescribed by Burkes's physician for night-time leg cramps. The prescription was filled by Bonzone; however, the medication given to Burkes was quinidine. Not knowing that she had been given the wrong medication, Burkes took the quinidine tablets for approximately two weeks. On August 25, 1996, Burkes was admitted to the Baptist Medical Center in Jackson, Mississippi suffering from an adverse drug reaction to quinidine.
¶ 4. When the circuit court entered its order granting the motion for summary judgment, it found the following:
The Court finds that the Plaintiff filed her Complaint on December 4, 1996. The Defendants answered the Complaint and propounded discovery request on January 20, 1997. The Plaintiff answered Defendants' discovery request on February 16, 1997 and April 11, 1997. The Defendants, thereafter on April 15, 1997 filed their motion to remove this case to the United States District Court for the Southern District of Mississippi. As a result, discovery in this matter ceased. The District Court on December 12, 1997 remanded this cause back to the Circuit Court.
On January 8, 1998 the Defendants filed their Motion for Summary Judgment or in the Alternative to Compel. The Plaintiff filed a response to the Defendants' Motion and the Defendants, thereafter filed their rebuttal to Plaintiffs response. This Court on April 21, 1998 realizing that discovery had ceased and the original discovery deadline of December 31, 1997 had expired, as a result of Defendants' motion to remove this cause to Federal Court, entered an Amended Scheduling Order and held the Defendants' Motion for Summary Judgment in abeyance until after the expiration of the discovery deadline of August 15, 1998.
The Court finds that pursuant to the Amended Scheduling Order, the Plaintiff failed to designate its expert witness in accordance with the Mississippi Rules of Civil Procedure. The Defendants at that time filed their Renewed Motion for Summary Judgment, or in the Alternative a Motion to Compel and other relief. The Plaintiff did not respond to the Defendants' Motion. The Court on June 16, 1998, granted the Defendants' Motion to Compel, ordering that the Plaintiff designate their expert on or before Monday, June 22, 1998. The Plaintiff failed to properly designate their expert by June 22, 1998, and the Defendants on July 6, 1998, filed a Motion for Judgment as a Matter of Law and to Dismiss. The Plaintiff did not respond to the Defendants' Motion.
The Court finds that the discovery deadline has expired and the Plaintiff has failed to properly designate her expert witness. The failure to do so is taken as evidence that the Plaintiff cannot meet her burden in this matter. The Defendants' Motion for Summary Judgment is therefore granted.
¶ 5. In her motion to reconsider the order granting the motion for summary judgment, Burkes informed the court that her expert witnesses had been designated since March 24, 1997. Following a hearing on Burkes's motion to reconsider, the court affirmed the summary judgment against Burkes and dismissed her suit with prejudice without further comment.

Analysis of Issues Presented
Was summary judgment the appropriate remedy under the circumstances of this case?
¶ 6. We begin by stating the familiar standard of review with regard to a trial court's grant of summary judgment. "The standard for reviewing the granting *328 or the denying of summary judgment is the same standard as is employed by the trial court under Rule 56(c). This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." Aetna Cas. and Sur. Co. v. Berry, 669 So.2d 56, 70 (Miss.1996) (citing Mantachie Natural Gas v. Mississippi Valley Gas Co., 594 So.2d 1170, 1172 (Miss.1992)). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Russell v. Orr, 700 So.2d 619, 622 (Miss.1997); Northern Elec. Co. v. Phillips, 660 So.2d 1278, 1281 (Miss.1995).
¶ 7. The burden of showing that no genuine issue of material fact exists lies with the moving party, and we give the benefit of every reasonable doubt to the party against whom summary judgment is sought. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990). We do not try issues. Rather, we only determine whether there are issues to be tried. Townsend v. Estate of Gilbert, 616 So.2d 333, 335 (Miss.1993). Furthermore, it is well-settled that motions for summary judgment are to be viewed with a skeptical eye, and if a trial court should err, it is better to err on the side of denying the motion. Ratliff v. Ratliff, 500 So.2d 981, 981 (Miss.1986). Our standard of review established, we now turn to the merits of Burkes's claim.
¶ 8. A careful review of the record indicates that the lower court's order granting the motion for summary judgment was very specific as to the grounds for granting the motion. The order was as follows: "The Court finds that the discovery deadline has expired and the Plaintiff has failed to properly designate her expert witness. The failure to do so is taken as evidence that the Plaintiff cannot meet her burden in this matter. The Defendants' Motion for Summary Judgment is therefore granted." The lower court denied Burkes's motion for rehearing by simply affirming its previous order granting summary judgment.
¶ 9. The record reveals that on March 24, 1997, Burkes had in fact designated as experts Bruce R. Parks, Ph.D. and Sonia M. Busby, Pharm.D., both being employed with the University of Mississippi School of Pharmacy. In a response to an interrogatory requesting the names of all individuals having discoverable information regarding the case, Burkes gave the names of all of her treating physicians, including Dr. A.B. Britton, III, the physician who diagnosed her with an adverse reaction to quinidine sulfate and admitted her to the Mississippi Baptist Medical Center for treatment. In response to a request for production of documents, Burkes provided copies of all medical records, including the medical records of Mississippi Baptist Medical Center which reflected the diagnosis that Burkes had an adverse reaction to quinidine sulfate.
¶ 10. As shown, Burkes had designated her experts over a year prior to the trial court's dismissal of her lawsuit and prior to the case being removed to federal court. However, in the designation, Burkes did not state the subject matter on which the experts were expected to testify, the substance of the facts and opinions to which each expert was expected to testify, and a summary of the grounds for each expert's opinion. This information had been requested by the defendants pursuant to interrogatories served on Burkes. Perhaps this is what the trial judge was referring to in the order when she said that the plaintiff had "failed to properly designate" her experts.
¶ 11. As stated, Burkes informed the court in her motion to reconsider that her expert witnesses had been designated since March 24, 1997. The order entered by the trial court in response to Burkes's motion to reconsider did not expand upon the court's initial order granting summary judgment. It is apparent to this Court that the lower court's order granting *329 Fred's motion for summary judgment was in the nature of sanctions, although it did include the recitation that the failure of plaintiff "to properly designate her experts is taken as evidence that the Plaintiff cannot meet her burden in this matter."
¶ 12. The Mississippi Supreme Court recently addressed the question of when dismissal is an appropriate sanction for a discovery violation in Robert v. Colson, 729 So.2d 1243, 1247-48 (Miss.1999), by stating the following:
We have repeatedly held dismissal is to be used as a sanction only as a last resort. "Lower courts should be cautious in either dismissing a suit or pleadings or refusing to permit testimony.... The reason for this is obvious. Courts are courts of justice not of form. The parties should not be penalized for any procedural failure that may be handled without doing violence to court procedures." Caracci v. International Paper Co., 699 So.2d [546] at 556 [(Miss. 1997)] (quoting Clark v. Mississippi Power Co., 372 So.2d 1077, 1078 (Miss.1979)). See Pierce v. Heritage Properties, Inc., 688 So.2d 1385, 1388 (Miss.1997) ("The power to dismiss is inherent in any court of law or equity, being a means necessary to orderly expedition of justice and the court's control of its own docket.... Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.").
¶ 13. In appropriate circumstances under Rule 37(b)(2)(C) of the Mississippi Rules of Civil Procedure, trial courts may impose sanctions by "dismissing the action or proceeding or any part thereof." M.R.C.P. 37(b)(2)(C). Such dismissals by the trial court are reviewed under an abuse of discretion standard. When this Court reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard. If the trial court applied the right legal standard, then this Court will affirm a trial court's decision unless there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." Pierce v. Heritage Properties, Inc., 688 So.2d 1385, 1388 (Miss.1997) (quoting Cooper v. State Farm Fire & Cas. Co., 568 So.2d 687, 692 (Miss.1990)); Scoggins v. Ellzey Beverages, Inc., 743 So.2d 990, 996 (Miss.1999).
¶ 14. Although we have determined that the trial court's order granting summary judgment was in the nature of sanctions, we look further to determine if the grant of summary judgment was otherwise proper. As stated, our review is de novo, and we look at all the evidentiary matters before usadmissions in pleadings, answers to interrogatories, depositions, affidavits, etc.
¶ 15. At the time the motion for summary judgment was granted, the record reveals that Fred's and Dr. Bonzone had admitted that Burkes brought a prescription for quinine sulfate to Fred's pharmacy in Lexington and that Dr. Bonzone filled the prescription. It also had been admitted that Dr. Bonzone "mistakenly mislabeled the medicine dispensed to plaintiff as quinidine sulfate, instead of quinine sulfate." The medical records that were a part of the case at that time show that Burkes had been admitted to Baptist Medical Center with an admitting diagnosis of "inappropriate medicine: gastritis" and a discharge diagnosis of "adverse drug reaction to quinidine." As stated, the complaint filed by Burkes alleged that her prescription had been filled with quinidine instead of quinine, as prescribed by Dr. Warren.
¶ 16. Fred's and Dr. Bonzone contend that the granting of the motion for summary judgment was proper because Burkes could not prevail unless she was able to show by expert testimony that Dr. Bonzone was negligent in filling Burkes's prescription and that the injuries suffered by Burkes were proximately caused by his negligence. The conclusion of their argument is that since discovery had been concluded *330 without Burkes's supplementing her answer to their interrogatory to state the opinion that her experts would give, she could not meet her burden at trial.
¶ 17. Fred's and Dr. Bonzone further argue that the medical records are not sworn documents and therefore, are not adequate to create a genuine issue of material fact. They also point out that Burkes cannot rest on her pleadings and the discovery documents to defeat their motion for summary judgment.
¶ 18. Not surprisingly, Burkes argues the exact opposite of the contentions made by Fred's and Dr. Bonzone. Additionally, Burkes argues that notwithstanding the pleadings and her response to Fred's and Dr. Bonzone's motion for summary judgment, they are required to establish the absence of a genuine issue of material fact. In support of her contention is this regard, Burkes directs our attention to Smith v. H.C. Bailey Companies, 477 So.2d 224 (Miss.1985), where the Mississippi Supreme Court had this to say: "Summary judgment is not, however, an automatic sanction for noncompliance with Rule 56(e). A movant must establish the propriety of the relief by the strengths of his own showing, not by the defects in his opponents showing. Even accepting the uncontroverted statements in the defendants' affidavits as true, the defendants were not entitled to judgment as a matter of law." Id. at 233 (citing Jackson v. State of Mississippi, 644 F.2d 1142, 1144 (5th Cir.1981)).
¶ 19. Burkes also argues that at the time the court granted summary judgment, her attorney was "taking all possible steps to obtain the deposition of Defendants in an effort to obtain information to present to her experts for purposes of evaluating the necessity of expert opinion testimony in this case." She contends the appellees, especially Dr. Bonzone, were uncooperative and that they refused to be deposed. We do not believe that the resolution of the issues in this case requires us to determine the merits of Burkes's contentions in this regard. We simply note that the record reveals that Burkes did make an unsuccessful effort to depose Dr. Bonzone prior to the trial court's granting summary judgment.
¶ 20. We note that Fred's and Dr. Bonzone, in support of their motion for summary judgment, offered no expert sworn testimony that contradicted the allegations of the pleadings and the findings reflected in the medical records. Thus, when the motion for summary judgment was granted, the issue remained of whether Dr. Bonzone had in fact mis-filled Burkes's prescription. The medical records which were produced by Burkes during discovery showed, without contradiction, that upon admission, Burkes had a serum quinidine level of .7. The medical records also showed, without contradiction, that Burkes had suffered acute gastritis which was quinidine induced. According to the complaint filed by Burkes, she had ingested quinidine given her by Dr. Bonzone. Dr. Bonzone admitted that the medicine prescribed for Burkes was quinine sulfate. While not identifying the medicine he gave Burkes, Dr. Bonzone contends that the medicine was mislabeled as quinidine sulfate. Whether it was mislabeled or was in fact quinidine sulfate was a genuine issue of material fact. Consequently, there remained material issues of fact when the motion for summary judgment was granted.
¶ 21. As noted by Burkes, Fred's and Dr. Bonzone's motion for summary judgment does not take issue with the substantive allegations raised by Burkes; rather, the motion targets the inability of Burkes to prove her case because of the lack of experts. It appears to us that it does not require expert testimony to prove that mis-filling a prescription is negligence. It does, however, take a medical expert to prove that Burkes's injuries were caused by the drug quinidine.
¶ 22. In this regard, we note that the medical records produced in discovery *331 clearly conclude that quinidine was the culprit. According to the medical records, that conclusion was reached by Dr. A.B. Britton, III, Burkes's treating physician at Baptist Medical Center. His name had been separately disclosed to Fred's and Dr. Bonzone, not as an expert, but as a person having discoverable information about Burkes's allegations. Of course, it is obvious that a medical doctor possesses special knowledge and expertise in medical matters. It is also obvious, based on the disclosed documents, that Fred's and Dr. Bonzone were aware of Dr. Britton's final opinion though that opinion had not been disclosed to them in the proper form.
¶ 23. Under the facts and circumstances of the case at bar, we find that the granting of summary judgment and dismissal with prejudice were an abuse of discretion by the trial judge. We, therefore, reverse and remand.
¶ 24. Although we are reversing and remanding this case for trial, we want to be clear that Burkes had an obligation to supplement her answer, designating her experts, to include the subject matter on which the experts were expected to testify, the substance of the facts and opinions to which each expert was expected to testify, and a summary of the grounds for each expert's opinion. We do not condone Burkes's failure to do so, and on remand, the trial judge is free to impose whatever sanctions she determines to be appropriate for Burkes's actions. In this regard, we only add that the trial court should also consider the role, if any, that Fred's and Dr. Bonzone had in frustrating or thwarting Burkes's effort to take the depositions she desired and whether their actions, if any, in that regard impacted Burkes's ability to timely supplement her answer regarding her designated experts.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF HOLMES COUNTY GRANTING SUMMARY JUDGMENT FOR THE APPELLEES IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. BRIDGES, J., NOT PARTICIPATING.
NOTES
[1] The parties later stipulated that the correct name of the defendant was Fred's Stores of Tennessee, Inc. and substituted Fred's Stores of Tennessee, Inc. for Fred's, Inc.