907 So.2d 376 (2005)
Frank James POTTER, Sr., Appellant,
v.
William C. HOPPER, Jr., Appellee.
No. 2003-CA-02018-COA.
Court of Appeals of Mississippi.
January 11, 2005.
Rehearing Denied May 17, 2005.
Certiorari Dismissed July 21, 2005.
*377 David Clifton Morrison, attorney for appellant.
Margaret Franklin Puckett McArthur, Harry R. Allen, Gulfport, attorneys for appellee.
Before BRIDGES, P.J., MYERS and BARNES, JJ.
BRIDGES, P.J., for the Court.
¶ 1. Frank Potter sued Dr. William Hopper and alleged that Dr. Hopper neglected to properly treat Potter's broken leg and thereby committed medical malpractice. Dr. Hopper denied Potter's claim and the matter proceeded before the Harrison County Circuit Court. Dr. Hopper filed a motion for summary judgment. The circuit court granted Dr. Hopper's motion for summary judgment and dismissed Potter's *378 case with prejudice. Aggrieved, Potter appeals and brings the following issue, altered slightly for clarity, before this Court:
I. THE [CIRCUIT] COURT ERRED IN FINDING THAT POTTER'S NOTICE OF HIS SECOND RULE 26 EXPERT DESIGNATION AND INITIAL REPORT, PROVIDED SEVEN DAYS AFTER THE SCHEDULING ORDER DEADLINE, IS NOT GROUNDS FOR SUMMARY JUDGMENT AND DISMISSAL.
Finding no error, we affirm the decision of the circuit court.

FACTS
¶ 2. In May of 1997, James Potter went to the Garden Park Hospital emergency room after he wrecked his motorcycle. Potter broke his leg in multiple places. Dr. Frank Hopper, an orthopedic surgeon, tended to Potter's injuries. Dr. Hopper initially put Potter's leg in a long leg cast and made sure that Potter kept the leg immobile. In June of 1997, Dr. Hopper put Potter's leg in a short cast and continued to monitor the healing process of Potter's various fractures. Satisfied, Dr. Hopper released Potter in September of 1997.
¶ 3. Potter continued to experience pain, so he sought a second opinion from Dr. Paul Stanton. Dr. Stanton performed a radiographic study. Dr. Stanton, unsatisfied with the status of Potter's leg, performed several surgeries intended to stabilize bone fragments with rods, pins, and plates. In November of 2000, Potter's leg became infected. Dr. Kyle Dickson attempted to treat the infection, but in May of 2002 Dr. Dickson had to amputate Potter's leg below the knee.
¶ 4. Nearly three years before Potter's leg was amputated, Potter sued Dr. Hopper and alleged that Dr. Hopper committed medical malpractice. Dr. Hopper denied any negligence in his treatment of Potter. During the discovery process, Potter and Dr. Hopper agreed on a scheduling order. According to the scheduling order, Potter was obligated to provide expert designations and responses that met the standards of Rule 26 of the Mississippi Rules of Civil Procedure on or before March 3, 2003. However, Dr. Edwin Season, Potter's medical expert, did not tender his initial report until March 10, 2003, when he finally sent it to Potter's counsel. Potter's counsel immediately transmitted Dr. Season's report to Dr. Hopper's attorney.
¶ 5. On May 1, 2003, Dr. Hopper filed a motion for summary judgment. Dr. Hopper argued that (1) Potter tendered Dr. Season's expert designation after the scheduling order deadline expired and (2) that Dr. Season's statement did not meet the standards of Rule 26 of the Mississippi Rules of Civil Procedure. The circuit court found that Dr. Hopper's initial report was late under the scheduling order and insufficient according to Rule 26. The circuit court concluded that Potter had no medical expert to contradict Dr. Hopper's expert and thus, there was no genuine issue of material fact left for a jury to resolve. Accordingly, the circuit court granted Dr. Hopper's motion for summary judgment and dismissed Potter's complaint with prejudice.

ANALYSIS

I. DID THE [CIRCUIT] COURT ERR IN FINDING THAT POTTER'S NOTICE OF HIS SECOND RULE 26 EXPERT DESIGNATION AND INITIAL REPORT, PROVIDED SEVEN DAYS AFTER THE SCHEDULING ORDER DEADLINE, IS NOT GROUNDS *379 FOR SUMMARY JUDGMENT AND DISMISSAL?
¶ 6. Potter alleges that the circuit court improperly granted Dr. Hopper's motion for summary judgment. This Court conducts a de novo review of a decision whether to grant summary judgment. Powell v. Methodist Health Care  Jackson Hosp., 856 So.2d 353(¶ 7) (Miss. Ct.App.2003). That review includes examination of evidentiary matters in the record in the light most favorable to the nonmoving party. Saucier v. Biloxi Reg'l Med. Ctr., et al., 708 So.2d 1351(¶ 10) (Miss.1998). Unless a triable issue of fact exists, this Court will affirm the circuit court's decision. Id.
¶ 7. Potter advances one issue but makes several arguments within it. Potter claims that (1) it was not his fault that Dr. Season's report was late, since Potter's counsel sent Dr. Season a letter and informed Dr. Season of the deadline; (2) because a trial date was not set, Dr. Hopper was not prejudiced when Potter provided Dr. Season's expert designation seven days late; (3) a genuine issue of material fact existed because Dr. Hopper had notice of Dr. Season's conclusion  a conclusion that contradicted Dr. Hopper's contention that he was not negligent; (4) there are no hard and fast rules regarding supplementation of discovery; (5) Dr. Hopper should have filed a motion to compel discovery if Dr. Hopper felt that Dr. Season's initial designation and accompanying report did not meet Dr. Hopper's standards, and; (6) dismissal of his case was harsh and unwarranted under the circumstances.
¶ 8. Before delving too deeply into those issues, we consider Potter's response to the underlying motion  that is, did Potter respond to Dr. Hopper's motion in a manner sufficient to defeat the motion for summary judgment? Suffice to say, if Potter did not bring a sufficient defense to Dr. Hopper's motion for summary judgment, then consideration of the timing and sequence of expert designation and whether Potter complied to the agreed scheduling order becomes irrelevant.
¶ 9. A trial court grants a motion for summary judgment when there is no genuine issue of material fact. Powell, 856 So.2d at (¶ 7). "A material fact is a fact that tends to resolve any of the issues properly raised by the parties." Id. (citations omitted). A party opposing a motion for summary judgment must be diligent. Saucier, 708 So.2d at (¶ 22). One does not defeat a motion for summary judgment by responding with general allegations. Bowie v. Montfort Jones Mem'l Hosp., 861 So.2d 1037, 1040(¶ 8) (Miss.2003). Instead, one must set forth specific facts that show the existence of issues which necessitate trial. Id. The non-moving party cannot rely on the pleadings, but must submit affidavits or otherwise that set forth specific facts that demonstrate genuine issues for trial. Saucier, 708 So.2d at (¶ 22). Put differently, the responding party must rebut the moving party's claim by producing supportive evidence of significant and probative value. Powell, 856 So.2d at (¶ 8).
¶ 10. That being said, we consider whether Potter put forth sufficient evidence to demonstrate the existence of material issues. To recover under a negligence action, a plaintiff must demonstrate the defendant's negligence by a preponderance of the evidence. Powell, 856 So.2d at (¶ 11). A successful claim of medical malpractice requires a showing of a standard of professional practice and care and a showing of injury to the plaintiff proximately caused by deviation from the standards. Id. Unless the matter in a medical malpractice action is within the common knowledge of laymen, negligence cannot be established without medical testimony that the defendant failed to use *380 ordinary skill and care. Id. Absent expert medical testimony that articulates the duty of care a physician owes to a particular patient under the circumstances and identifies the particular point that the physician breached that duty and caused injury to the plaintiff, a plaintiff's claim for negligence must fail. Phillips v. Hull, 516 So.2d 488, 491 (Miss.1987).
¶ 11. At the hearing on Dr. Hopper's motion for summary judgment, Potter did not present an expert's affidavit that complied with the requirements in a medical malpractice case. No affidavit articulated the duty of care that Dr. Hopper owed Potter. No affidavit identified the point that Dr. Hopper breached a duty to Potter or how such a breach caused Potter's injury. The closest Potter came to fulfillment of the response required to defeat a motion for summary judgment was a one-page letter from Dr. Edwin Season. Clearly, a letter is not an affidavit. Even if the content of the letter were in affidavit form, the content would still be insufficient. Dr. Season's letter contained a brief recitation of the facts and Dr. Season's conclusions. Dr. Season concluded that Dr. Hopper deviated from the normal standards of orthopedic care when he discharged Potter. Dr. Season also stated that Dr. Hopper should have diagnosed and treated a nonunion in Potter's leg. While Dr. Season claimed that Dr. Hopper breached the standard of care, he does not announce that standard of care.
¶ 12. At best, Dr. Season's letter is a broad statement of general allegations. However, Dr. Hopper presented two expert affidavits that concluded that he did not breach the applicable standard of care. Accordingly, we affirm the circuit court's decision. Our reasoning stems not from the fact that Potter failed to file his expert's designation one week late. We affirm because Potter failed to respond to Dr. Hopper's motion for summary judgment with an affidavit, submitted by an expert, that established the standard of acceptable professional practice, that Dr. Hopper deviated from that standard, that such deviation was the proximate cause of Potter's injuries, and that Potter suffered damages as a result.
¶ 13. Though we are sympathetic to Mr. Potter's injury and can only imagine coping with the loss of a limb, we simply cannot initiate precedent that would carve a path leading to prosecution of medical malpractice claims based on allegations alone. Unfortunately, in lacking sworn expert testimony, that is what the circuit court had before it. The circuit court followed precedent when it granted Dr. Hopper's motion for summary judgment. Likewise, this Court follows precedent and affirms.
¶ 14. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ. CONCUR. IRVING, J., CONCURS IN RESULT ONLY.